IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANA GRACE AUSTIN,

    Plaintiff,

    v.                                                                                                  1:17-cv-00455-LF

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on plaintiff Dana Grace Austin's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (Doc. 17), which was fully briefed on December 20, 2017. Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinion of consultative psychological examiner Dr. Louis Wynne. The Court therefore GRANTS Ms. Austin's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Austin, currently age 54, dropped out of high school after the ninth grade, and later completed a GED and a two-year pharmacy technician program at a community college. AR 163, 167, 349.[3] She worked for over five years on a production line, and for over 14 years as a pharmacy technician. AR 168. She filed an application for disability insurance benefits on April 26, 2013, alleging disability since February 5, 2013 due to bipolar disorder, fibromyalgia, degenerative disk disease, anxiety, post-traumatic stress disorder ("PTSD"), anxiety, and panic attacks. AR 146, 163, 166. The Social Security Administration ("SSA") denied her claim

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

initially on June 24, 2013. AR 89–94. The SSA denied her claims on reconsideration on February 11, 2014. AR 96–101. Ms. Austin requested a hearing before an ALJ. AR 102. On May 13, 2015, ALJ Myriam Fernandez Rice held a hearing. AR 30–55. ALJ Fernandez Rice issued her unfavorable decision on August 19, 2015. AR 11–29.

The ALJ found that Ms. Austin was insured for disability benefits through December 31, 2017. AR 16. At step one, the ALJ found that Ms. Austin had not engaged in substantial, gainful activity since February 5, 2013, her alleged onset date. *Id*. Because Ms. Austin had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. *Id*. At step two, the ALJ found that Ms. Austin had the following severe impairments: depressive disorder, PTSD, bipolar disorder, anxiety disorder, fibromyalgia, and degenerative disk disease. *Id*. At step three, the ALJ found that none of Ms. Austin's impairments, alone or in combination, met or medically equaled a Listing. AR 16–18. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Austin's RFC. AR 18–23. The ALJ found that Ms. Austin had the RFC to perform light work

> except she can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; she can stand and/or walk for approximately six hours total in an eight-hour workday; and can sit for approximately four hours total in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, kneel, crawl, and climb ramps or stairs. She is to avoid even moderate use of moving machinery and exposure to unprotected heights. She is able to maintain, understand, and remember simple work instructions with occasional changes in work setting. She is limited to only occasional interaction with the public and co-workers.

AR 18.

At step four, the ALJ concluded that Ms. Austin was unable to perform her past relevant work as a pharmacy technician. AR 23. The ALJ found Ms. Austin was not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national

economy—such as mail clerk; inspector, hand packager; and assembler, small products. AR 24–25.

Ms. Austin requested review by the Appeals Council, and submitted additional evidence. AR 8–10. The Appeals Council accepted the new evidence, making it part of the record. AR 5. The Appeals Council denied Ms. Austin's request for review on March 16, 2017. AR 1–6. Ms. Austin timely filed her appeal to this Court on April 14, 2017. Doc. 1.

### IV. Ms. Austin's Claims

Ms. Austin raises several arguments for reversing and remanding this case: (1) the ALJ's RFC findings about her ability to walk, stand, and sit are not supported by substantial evidence, particularly in light of new evidence submitted to the Appeals Council; (2) the RFC failed to adequately account for her non-exertional limitations from pain and fatigue; (3) the ALJ failed to adequately account for the limitations in consultative examining psychologist Dr. Louis Wynne's opinion; (4) the ALJ failed to properly consider her reported symptoms; (5) the ALJ's step five finding is incomplete and incorrect. Doc. 17 at 5–20. Because the Court remands based on the ALJ's failure to properly analyze the opinion of Dr. Wynne, the Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

Ms. Austin argues that the ALJ failed to account for all of her mental limitations in the RFC. Doc. 17 at 13–17. In particular, she argues that the ALJ failed to explain why she adopted some, but not all, of the limitations found by consultative psychological examiner Dr. Wynne. *Id*. at 15. The Commissioner argues that the ALJ did not err by failing to discuss the limitations

in Dr. Wynne's opinion because the ALJ relied on the opinions of the non-examining state agency doctors. Doc. 19 at 9–11. For the reasons discussed below, I agree with Ms. Austin.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[4] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p,

---

[4] SSR 96-5p was rescinded effective March 27, 2017, after this claim was adjudicated. *See* Federal Register Notice Vol. 82, No. 57, page 15263.

1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In *Haga*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE's") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.*

Dr. Louis Wynne conducted a consultative psychological exam of Ms. Austin on June 12, 2013. AR 348–51. Dr. Wynne conducted an interview and a mental status exam. *Id.* Dr. Wynne concluded that Ms. Austin

> can read and understand basic written instructions but her concentration and ability to persist at simple work tasks are at least mildly impaired. She could not interact well with the general public, her coworkers, or her supervisors and she also might have difficulty adapting to changes in the workplace. She could recognize obvious hazards and manage her own benefit payments.

AR 350–51. Dr. Wynne assessed Ms. Austin's Global Assessment of Functioning ("GAF") at 46, which indicates "serious symptoms . . . or any serious impairment in social, occupational, or school functioning" such as "inability to keep a job." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). AR 351.

The ALJ gave Dr. Wynne's opinion "significant weight" because "it is consistent with the examination and the record as a whole." AR 21. The ALJ, however, failed to either adopt or explain why she rejected one of the limitations in Dr. Wynne's opinion. The ALJ appears to have adopted Dr. Wynne's finding that Ms. Austin "might have difficulty adapting to changes in the workplace" by limiting her to "occasional changes in work setting" in the RFC. AR 18, 350–51. The ALJ appears to have adopted Dr. Wynne's finding that Ms. Austin "could not interact

7

well with the general public" by limiting her to occasional interaction with the public in the RFC. AR 18, 350. And, the ALJ appears to have adopted Dr. Wynne's finding that Ms. Austin "could not interact well with . . . coworkers" by limiting her to occasional interaction with coworkers in the RFC. *Id*.[5] The ALJ, however, failed to address Dr. Wynne's finding that she "could not interact well . . . with supervisors." There is no discussion of Ms. Austin's ability to interact with supervisors in the ALJ's RFC.[6] *See* AR 18–23. The ALJ failed to explain why she rejected

---

[5] Ms. Austin argues that the ALJ's RFC finding limiting her to "occasional interaction with the public and co-workers . . . is contrary to Dr. Wynne's finding." Doc. 17 at 14. The Court does not agree that these are necessarily "contrary." On remand, however, the ALJ is reminded that the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7.

[6] This is error because the ALJ must do a function-by-function analysis. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

this limitation. This requires remand. *See Haga*, 482 F.3d at 1208 (finding error in ALJ's adoption of some moderate limitations while rejecting others without explanation).

The Commissioner argues that the ALJ's failure to address all of the limitations in Dr. Wynne's opinion is excused by the fact that the ALJ gave "great weight" to the opinions of state agency doctors Mohney and Cox. Doc. 19 at 9–11. The Court disagrees. The Commissioner makes several post hoc arguments as to why the ALJ could have given the opinions of Drs. Mohney and Cox greater weight than the opinion of Dr. Wynne. *See* Doc. 19 at 10–11. However, the ALJ did not give the opinions of Drs. Mohney and Cox greater weight. The Court sees no difference between the "significant weight" given to Dr. Wynne's opinion and the "great weight" given to the opinions of Drs. Mohney and Cox.

Moreover, the ALJ provided no explanation of how, or if, she incorporated the inconsistent opinions of Dr. Wynne and Drs. Mohney and Cox into Ms. Austin's RFC. Drs. Mohney and Cox, unlike Dr. Wynne, concluded that Ms. Austin had only "mild limitations" in her ability to "interact adequately with coworkers and supervisors." AR 65, 82.[7] The Commissioner argues that the ALJ relied on Drs. Mohney's and Cox's opinions "which explained why Dr. Wynne's limitations regarding supervision were too extreme." Doc. 19 at 11. As explained above, however, the ALJ did not give the opinions of Drs. Mohney or Cox any greater weight than the opinion of Dr. Wynne. In addition, the ALJ did not fully adopt the opinions of Drs. Mohney and Cox—finding that the record at "hearing level supports further limitations" beyond those contained in their opinions. AR 22. In this case, as in *Haga*, "the

---

[7] Drs. Mohney and Cox opined that Ms. Austin was moderately limited in her ability to interact with the general public, but not significantly limited in her ability to "accept instructions and respond appropriately to criticism from supervisors" or in her ability "to get along with coworkers or peers without distracting them or exhibiting behavior extremes." AR 64–65, 81–82.

9

evidence on which the ALJ explicitly relied in [her] decision does not imply an explanation for rejecting any of [the CE's] restrictions . . . , and, in fact, the ALJ never stated that [s]he rejected [the CE's] opinion." *Haga*, 482 F.3d at 1208. In addition, "it is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding." *Id.* at 1207. This Court cannot rely on explanations not provided by the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). The Court is unable to discern where the ALJ derived the social limitations she included in Ms. Austin's RFC. On remand, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The ALJ also must explain "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

## VI.     Conclusion

The ALJ erred in failing to incorporate all of the moderate limitations assessed by Dr. Louis Wynne into Ms. Austin's RFC without explanation. In particular, the ALJ failed to explain why she rejected the moderate limitation in Ms. Austin's ability to interact with supervisors. The Court remands so that the ALJ can explain the evidentiary basis for the RFC determination.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing (Doc. 17) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent